ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Symetrics Industries, LLC | ) | ASBCA No. 59297 |
| | ) | |
| Under Contract No. W58RGZ-07-C-0204 | ) | |

APPEARANCES FOR THE APPELLANT:    David Z. Bodenheimer, Esq.
                                  Jason C. Lynch, Esq.
                                    Crowell & Moring LLP
                                    Washington, DC

APPEARANCES FOR THE GOVERNMENT:   Raymond M. Saunders, Esq.
                                    Army Chief Trial Attorney
                                  Robert B. Neill, Esq.
                                    Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

INTRODUCTION

Appellant timely appeals from a contracting officer's final decision claiming $121,824 plus interest accrued from the date of payment, for alleged defective pricing under a contract for modem units. The parties have elected to waive a hearing and submit their cases upon the record pursuant to Board Rule 11. We sustain the appeal.

FINDINGS OF FACT

On 30 August 2007, the Department of the Army awarded a letter contract, Contract No. W58RGZ-07-C-0204, to appellant, Symetrics Industries, LLC, for the production of 295 Improved Data Modem (IDM) 304 units, (Joint Statement of Stipulated Facts (stip. 6)). Symetrics submitted a firm-fixed-price proposal (FFP) to procuring contracting officer (PCO) Hanford Jones on 7 December 2007 (stip. 9). PCO Jones negotiated the contract price on behalf of the Army, with the assistance of contract specialist Johnny Coleman (stip. 43). The Defense Contract Audit Agency (DCAA) assisted PCO Jones in the evaluation of the price proposal by conducting an audit of the proposal (see stip. 14). DCAA Auditor Sherry Hepfner conducted that audit (stip. 14).

Earlier, on 12 July 2007, the Defense Contract Management Agency (DCMA) had approved an overhead rate of 179.20% and a General and Administrative (G&A) rate of 25.60% for Symetrics's contractor fiscal year (CFY) 2007 (stip. 45). On

7 January 2008, Symetrics submitted a Forward Pricing Rate Proposal (FPRP) to DCMA (stip. 47). On 23 January 2008, Symetrics submitted to PCO Jones a revised price proposal for the 295 IDM 304 units (stip. 13). The price proposal identified a direct labor overhead rate of 182.45% for CFY 2008, a direct labor overhead rate of 186.47% for CFY 2009, and G&A rates of 18.24% for CFY 2008 and CFY 2009 (*id.*).

On 4 February 2008, DCAA informed Symetrics that DCAA had been requested to audit the FPRP, and that DCAA had to complete the audit by 24 February 2008, "for [the price] proposal being audited by Sherry Hepfner" (stip. 51). On 7 February 2008, Symetrics sent DCAA the FPRP (stip. 54). The FPRP proposed overhead rates of 170.38% and G&A rates of 17.13% for CFY 2008 and CFY 2009 (stip. 54), lower than the rates identified in the price proposal (stip. 13).

DCAA Auditor Hepfner audited Symetrics's price proposal for the 295 IDM 304 units (stip. 14). By 21 February 2008, Auditor Hepfner was aware of the 7 February 2008 FPRP, was aware that the FPRP contained new overhead and G&A rates (new, at least, since the approval of the CFY 2007 rates) (*see* stip. 27), and was aware that the FPRP would likely lead to lower forward pricing rates (stips. 26, 27; gov't br. at 13). Indeed, on 21 February 2008, Auditor Hepfner wrote to ACO Gilmore:

> We are currently auditing the subject proposal for a quantity of 295 Improved Data Modem [IDM] 304. This is to advise you that on February 7, 2008, Symetrics submitted a new Forward Pricing Rate Proposal (FPRP), for CFYs 2008 and 2009. Symetrics priced the proposal with the new Overhead and General and Administrative (G&A rates). We have not audited the FPRP. Therefore, we recommend that a clause be included in the FFP contract, which will provide for a downward only adjustment for any savings that may result from the adjustment of the proposed rates after completion of our audit of the Symetrics FPRP for CFYs 2008 and 2009, direct labor and indirect rates and factors.

(Stip. 27) According to the government, that statement "plainly documents Ms. Hepfner's mistaken belief at the time that the IDM 304 'proposal' that she was then auditing was priced using [Symetrics's] newly updated overhead and G&A rates" (gov't reply at 9).

Similar to Auditor Hepfner's message to ACO Gilmore, on 25 February 2008, DCAA issued an audit report (Auditor Hepfner is listed as a primary contact for the report (R4, tab 22 at 11)) on the price proposal that noted that:

2

On February 7, 2008, Symetrics submitted a new Forward Pricing Rate Proposal (FPRP), for CFYs 2008 and 2009. Symetrics priced this proposal with the new overhead (OH) and G&A rates. Therefore,...we recommend that a clause be included in the FFP contract, which will provide for a downward only adjustment for any savings that may result from the adjustment of the proposed rates after completion of our audit of the Symetrics FPRP for CFYs 2008 and 2009, direct labor and indirect rates and factors.

(Stips. 28, 29) DCAA's report identified rates of 182.45% for CFY 2008 and 186.47% for CFY 2009, and G&A rates of 18.24% for CFY 2008 and CFY 2009 (R4, tab 22 at 6).

On 27 March 2008, the day that negotiations to definitize the contract price commenced (stip. 37), Symetrics submitted its final price proposal revision to the PCO (stip. 33). Like the 23 January 2008 price proposal and the DCAA audit report, the 27 March 2008 price proposal identified direct labor overhead rates of 182.45% for CFY 2008 and 186.47% for CFY 2009, and G&A rates of 18.24% for CFY 2008 and CFY 2009 (stips. 13, 33; R4, tab 22 at 6). Also on 27 March 2008, PCO Jones and Contract Specialist Coleman memorialized their prenegotiation objective (R4, tab 34 at 1). Their prenegotiation memorandum expressly references both the 7 February 2008 FPRP and the DCAA audit report regarding overhead and G&A, but identifies the overhead and G&A rates that appear in the price proposal (R4, tab 34 at 7). The prenegotiation memorandum reflects that PCO Jones and Contract Specialist Coleman erroneously believed that the price proposal used the FPRP rates:

> The contractor proposed the CFY 2008 and CFY 2009 OH and G&A rates *recently submitted in its FPRP, dated February 7, 2008.*
>
> ....
>
> ...DCAA compared the proposed indirect rates to the FPRP (as shown in the table below. [sic] DCAA also compared actual CFY 2007 OH and G&A rates...to the indirect rates *in the contractor's current FPRP* and calculated the percent increases. No significant variances were noted in the evaluation. The results of the analysis of the contractor's proposed CFY 2008 to CFY 2009 indirect rates are presented in the table below.

3

(R4, tab 34 at 7) (Emphasis added)  The table referenced in the quotation depicts the higher overhead and G&A rates for CFY 2008 and CFY 2009 that appear in the price proposal, not the lower rates for those years that appear in the FPRP (*compare* R4, tab 34 at 7 *with* stip. 54).

Four days later, on 1 April 2008, the parties agreed to a price of $7,284,435 for the 295 IDM 304 units (stip. 39).  As of that date, Symetrics had not revised its price proposal to reflect the FPRP overhead and G&A rates, nor had it transmitted those rates directly to PCO Jones or Contract Specialist Coleman (stips. 41, 43).  On 2 April 2008, Symetrics certified in a Certificate of Current Cost or Pricing data that:

> [T]he cost or pricing data...submitted...to the Contracting Officer or to the Contracting Officer's representative in support of Contract No. W58RGZ-07-C-0204 are accurate, complete, and current as of 01 April 2008.  This certification includes the cost or pricing data supporting any advance agreements and forward pricing rate agreements between the offeror and the Government that are part of the proposal.

(Stip. 40)

On 15 May 2008, the parties entered into Modification No. PZ0007, definitizing the $7,284,435 price for the 295 IDM units (stip. 44).  On 26 February 2014, by then Contracting Officer Coleman issued a contracting officer's final decision demanding payment of $121,824 in "excess cost," plus interest (stip. 63). This appeal timely followed on 27 May 2014.

## DECISION

The government contends that Symetrics violated the Truth in Negotiations Act (TINA), 10 U.S.C. § 2306(a), by failing to provide directly to PCO Jones or Contract Specialist Coleman the overhead and G&A rates that it submitted to DCAA in its FPRP.  The government has the burden of proving that its personnel who participated in the proposal evaluation or the negotiation of the contract were not clearly advised of the relevant cost or pricing data and that they lacked actual knowledge thereof. *Whittaker Corp. (Straightline Manufacturing Division)*, ASBCA No. 17267, 74-2 BCA ¶ 10,938 at 52,077.  Here, the government does not meet that burden.

As their prenegotiation memorandum expressly memorializes, PCO Jones and Contract Specialist Coleman negotiated the contract price knowing of the 7 February 2008 FPRP and relying upon what they understood were the FPRP-proposed rates. DCAA Auditor Hepfner evaluated the price proposal with the same knowledge and

4

understanding. Although the three evidently (at least ultimately) misunderstood what rates the FPRP proposed, the government points to no evidence that Symetrics misrepresented the contents of the FPRP, and all PCO Jones, Contract Specialist Coleman, and Auditor Hepfner had to do to confirm their understanding and discover their mistake (*see* gov't reply at 9) was to double-check (or, perhaps, check in the first place) what rates the FPRP actually proposed against their stated understanding. In view of the foregoing, we find that the government was aware or should have been aware of the FPRP-proposed rates; this being so, the government has not proven that Symetrics did not disclose the FPRP rates within the meaning of the Truth in Negotiations Act. *Cf. FMC Corp.*, ASBCA No. 30069, 87-1 BCA ¶ 19,544 at 98,759 (no TINA violation proven where contractor's data certification referenced its rate revision submission, which PCO could have, but did not, check).

Because the government has not proven a TINA violation, we need not address the government's contention that Federal Acquisition Regulation (FAR) clause 52.215-10, PRICE REDUCTION FOR DEFECTIVE CERTIFIED COST OR PRICING DATA (OCT 1997), or FAR 52.215-11, PRICE REDUCTION FOR DEFECTIVE CERTIFIED COST OR PRICING DATA—MODIFICATIONS (OCT 1997), should be read into the contract pursuant to the *Christian* doctrine.

Explaining that "[i]n its specific pricing proposal for the 295 IDM 304 data modems at issue here, as of the parties' agreement on price, April 1, 2008, Symetrics did not transmit to PCO Hanford Jones the updated indirect proposal submission for CFYs 2008 and 2009," the government contends that "it was Symetrics' failure to follow the requirement set out in FAR 15.407-3(a) to 'identify the latest cost pricing data already submitted in accordance with the [forward pricing rate] agreement' in its specific pricing proposal for definitization of its letter contract for 295 IDM 304 data modems that resulted in Symetrics' failure to meaningfully disclose to the contracting officer the cost or pricing data at issue in this appeal" (gov't mot. at 11). FAR 15.407-3(a) provides:

> When certified cost or pricing data are required, offerors are required to describe any forward pricing rate agreements (FPRAs) in each specific pricing proposal to which the rates apply and to identify the latest cost or pricing data already submitted in accordance with the FPRA. All data submitted in connection with the FPRA, updated as necessary, form a part of the total data that the offeror certifies to be accurate, complete, and current at the time of agreement on price for an initial contract or for a contract modification.

5

The government's argument does not persuade us that Symetrics violated TINA by not identifying the FPRP rates in its price proposal. We have said in the context of TINA that:

> Disclosure is not confined to a formal, written submission. Instead the contractor's disclosure obligation is fulfilled if the Government obtains the data in question in some other manner or had knowledge. It must be meaningful, regardless of the form it takes. Whether there has been meaningful disclosure depends upon application of a "rule of reason" to the particular circumstances of [ ] each case.

*Appeal of Alliant Techsystems, Inc.*, ASBCA Nos. 51280, 47626, 00-2 BCA ¶ 31,042 at 153,298-99 (internal citations and alterations omitted). The government cites no judicial or Board authority that FAR 15.407-3(a) governs a TINA disclosure, even though the regulation dates to 1997. 62 Fed. Reg. 51,224, 51,249-50 (Sept. 30, 1997). (*McDonnell Douglas Helicopter Systems*, ASBCA No. 50341, 99-2 BCA ¶ 30,546, which the government cites immediately after if not in support of this argument (gov't mot. at 12), does not address FAR 15.407-3.) On the facts of this case, where the government personnel (including the contracting officer) who evaluated the price proposal were all aware of the FPRP and expressly purported to rely upon it for rate information in their evaluation of the price proposal, we are satisfied that the FPRP rates at issue in this appeal were meaningfully disclosed to the government.

## CONCLUSION

For all these reasons, we sustain the appeal.

Dated: 13 August 2015

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

6

I concur                                        I concur


MARK N. STEMPLER                                RICHARD SHACKLEFORD
Administrative Judge                             Administrative Judge
Acting Chairman                                 Vice Chairman
Armed Services Board                            Armed Services Board
of Contract Appeals                             of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59297, Appeal of Symetrics Industries, LLC, rendered in conformance with the Board's Charter.

Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7